UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IROQUOIS CAPITAL INVESTMENT GROUP, LLC and IROQUOIS MASTER FUND, LTD., <br><br> Plaintiffs, <br><br> -against- <br><br> RESHAPE LIFESCIENCES, INC., <br><br> Defendant. | _____ Civ. _____ <br><br> COMPLAINT |

Plaintiffs Iroquois Capital Investment Group, LLC ("ICIG") and Iroquois Master Fund Ltd. ("Iroquois Master Fund" and together with ICIG, "Plaintiffs"), by their attorneys, Olshan Frome Wolosky LLP, for their Complaint against ReShape LifeSciences, Inc. ("Defendant" or the "Company"), state as follows:

### Summary

1. Plaintiffs are holders of shares of convertible preferred stock, which contain mandatory adjustment provisions as to the conversion price of their shares in the event that defendant issues common stock, or any instrument exercisable or exchangeable for common stock, for less than the conversion price of Plaintiffs' convertible preferred stock. These protections are commonly referred to anti-dilution provisions. Defendant issued securities to new investors on April 2, 2018 in a transaction that was dilutive to Plaintiffs' investment. However, defendant has failed to deliver a proper notice of adjustment as to the conversion price of Plaintiffs' preferred shares. Declaratory and other relief is appropriate to establish both the correct conversion price for Plaintiffs' remaining convertible preferred stock, and monetary relief is appropriate for convertible preferred stock that has already been exercised at the incorrect conversion price provided by defendants in the notice of adjustment.

## The Parties

2. Plaintiff Iroquois Capital Investment Group, LLC ("ICIG") is a Delaware limited liability company with an address at 205 East 42nd Street, 14th Floor, New York, New York. ICIG is a private investment fund. None of its members are citizens of California or Delaware.

3. Plaintiff Iroquois Master Fund is a Cayman Islands exempted limited liability company with its principal place of business in the Cayman Islands. Iroquois Master Fund is a private investment fund.

4. Defendant ReShape LifeSciences, Inc. is a Delaware corporation with its principal place of business at 1001 Calle Amanecer, San Clemente, California. The Company's shares are publicly traded on the NASDAQ stock exchange under the ticker symbol "RSLS." The Company was formerly known as Enteromedics Inc. The Company is a medical technology company that, according to its public filings, is "focused on the design, development and commercialization of transformative technology to treat obesity and metabolic diseases."

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction over Plaintiffs' claims in this action pursuant to 28 U.S.C. § 1332(a)(3) because this is an action between citizens of different States and in which a citizen of a foreign state is an additional party. The amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the parties have designated this District as the stipulated venue for adjudication of their disputes.

7. Defendant has consented to personal jurisdiction. Section 8(d) of the Certificate of Designation (as defined below), "[a]ll legal proceedings concerning the interpretation, enforcement and defense of the transactions contemplated by this Certificate of Designation (whether brought against the Corporation or Holder . . .) shall be commenced in the state and

2

federal courts sitting in the City of New York, Borough of Manhattan (the 'New York Courts')" and further that the Company "irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discuss herein, and hereby irremovably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of such New York Courts, or such New York Courts are improper or inconvenient venue for such proceeding."

### The Series B Certificate of Designation

8. Plaintiffs purchased 2,137 shares of Series B Convertible Preferred Stock ("Series B shares") issued by the Company pursuant to the Certificate of Designation of Preferences, Rights and Limitations of Series B Convertible Preferred Stock dated August 16, 2017 (the "Certificate of Designation"). The Certificate of Designation is annexed as Exhibit A.

9. Plaintiff Iroquois Master Fund purchased 632 Series B shares and Plaintiff ICIG, 1,505 Series B shares.

10. Pursuant to Section 6(a) of the Certificate of Designation, Plaintiffs are entitled to convert their Series B shares into shares of the Company's common stock by providing the Company with a notice of conversion.

11. The Certificate of Designation sets the conversion price of the Series B shares at $2.30 per share, subject to adjustment pursuant to the terms therein.

12. Pursuant to Section 7(b) of the Certificate of Designation, if while Plaintiffs' Series B shares are outstanding, the Company grants any additional shares of the Company's stock, or options to acquire shares of the Company' stock, that has, or may have, the effect of diluting the value of Plaintiffs' Series B shares, then the conversion price of Plaintiffs' Series B shares will be reduced to equal the "Base Conversion Price." The "Base Conversion Price" is

3

defined in the Certificate of Designation as any price per share that is lower than the $2.30 per share conversion price. In such a situation, Section 7(b) sets forth how to calculate the price of the shares of the Company's common stock that Plaintiffs would be entitled to convert their Series B shares into.

13. Section 7(b)(ii) of the Certificate of Designation governs the calculation of the Base Conversion Price if the Company issues "Convertible Securities." In full, this Section states:

> Issuance of Convertible Securities. If the Corporation in any manner issues or sells any Convertible Securities and the lowest price per share for which one share of Common Stock is at any time issuable upon the conversion, exercise or exchange thereof or otherwise pursuant to the terms thereof is less than the Conversion Price then in effect, then such share of Common Stock shall be deemed to be outstanding and to have been issued and sold by the Corporation at the time of the issuance or sale of such Convertible Securities for such price per share. For the purposes of this Section 7(b)(ii), the "lowest price per share for which one share of Common Stock is issuable upon the conversion, exercise or exchange thereof or otherwise pursuant to the terms thereof" shall be equal to (1) the lower of (x) the sum of the lowest amounts of consideration (if any) received or receivable by the Corporation with respect to one share of Common Stock upon the issuance or sale of the Convertible Security and upon conversion, exercise or exchange of such Convertible Security or otherwise pursuant to the terms thereof and (y) the lowest conversion price set forth in such Convertible Security for which one share of Common Stock is issuable upon conversion, exercise or exchange thereof or otherwise pursuant to the terms thereof minus (2) the sum of all amounts paid or payable to the holder of such Convertible Security (or any other Person) upon the issuance or sale of such Convertible Security plus the value of any other consideration received or receivable by, or benefit conferred on, the holder of such Convertible Security (or any other Person). Except as contemplated below, no further adjustment of the Conversion Price shall be made upon the actual issuance of such shares of Common Stock upon conversion, exercise or exchange of such Convertible Securities or otherwise pursuant to the terms thereof, and if any such issuance or sale of such Convertible Securities is made upon exercise of any Options for which adjustment of this Warrant has been or is to be made pursuant to other provisions of this Section 7(b), except as contemplated below, no further adjustment of the Conversion Price shall be made by reason of such issuance or sale.

4

14. Section 7(a) of the Certificate of Designation governs the adjustment of the Conversion Price in the event of, among other events, a reverse stock split. In full, this Section states:

> Stock Dividends and Stock Splits. If the Corporation, at any time while this Preferred Stock is outstanding: (i) pays a stock dividend or otherwise makes a distribution or distributions payable in shares of Common Stock on shares of Common Stock or any other Common Stock Equivalents (which, for avoidance of doubt, shall not include any shares of Common Stock issued by the Corporation upon conversion of, or payment of a dividend on, this Preferred Stock), (ii) subdivides outstanding shares of Common Stock into a larger number of shares, (iii) combines (including by way of a reverse stock split) outstanding shares of Common Stock into a smaller number of shares, or (iv) issues, in the event of a reclassification of shares of the Common Stock, any shares of capital stock of the Corporation, then the Conversion Price shall be multiplied by a fraction of which the numerator shall be the number of shares of Common Stock (excluding any treasury shares of the Corporation) outstanding immediately before such event, and of which the denominator shall be the number of shares of Common Stock outstanding immediately after such event. Any adjustment made pursuant to this Section 7(a) shall become effective immediately after the record date for the determination of stockholders entitled to receive such dividend or distribution and shall become effective immediately after the effective date in the case of a subdivision, combination or re-classification.

15. Section 7(g) of the Certificate of Designation requires the Company to provide a notice to holders of Series B shares of any adjustment to the conversion price of their preferred shares.

16. The Certificate of Designation is governed by Delaware law.

17. Section 8(d) of the Certificate of Designation provides for reimbursement of attorney's fees and other costs and expenses incurred by the prevailing party in any action to enforce the Certificate's provisions.

18. On June 1, 2018, the Company filed a Form 8-K disclosing a 1-for-15 reverse stock split of the Company's outstanding common stock (the "Reverse Stock Split"). As a result of the reverse stock split, each 15 shares of issued or outstanding common stock were converted

into one share of common stock. The Company announced that at the time of stock split there were 36,062,014 common stock shares outstanding, and immediately after the stock split there were 2,404,135 common stock shares outstanding. The share prices and amounts below are adjusted for the reverse stock split.

The Company Fails to Issue a Proper Notice of Adjustment

19. On April 3, 2018, the Company filed a Form 8-K disclosing that, on April 2, 2018, the Company had created a new series of preferred stock, Series D, and entered into a securities purchase agreement, pursuant to which it had sold (i) 6,000 shares of the Company's Series D Preferred stock, convertible at any time at the holder's option into a number of shares of the Company's common stock equal to $1,000 divided by $11.25 ($0.75 pre-split) (the "Series D Shares"), and (ii) warrants to purchase up to 2,333,333 shares (35 million pre-split) of the Company's common stock at an exercise price of $11.25 per shares ($0.75 pre-split) (the "2018 Warrants").

20. The Series D Shares are convertible into an aggregate of 533,333 shares (8.0 million pre-split) of the Company's common stock.

21. The Series D Shares constitute "Convertible Securities" under the Certificate of Designation, and thus trigger Section 7(b)(ii) of the Certificate of Designation.

22. On April 4, 2018, Plaintiffs received a Notice of Adjustment to the conversion price for their Series B shares, pursuant to section 7(g) of the Certificate of Designation.

23. The Notice of Adjustment stated that Plaintiffs' Series B share price was being adjusted downward to $11.25 per share ($0.75 pre-split).

24. However, the proper calculation of the required adjustment of the price of Series B shares results in a much lower adjustment, to at least $1.35 per share ($0.09 pre-split).

25.     The Company's issuance of the Series D Shares triggers section 7(b) of the Certificate of Designation, and the formula by which the Series B share price must be adjusted downward.

26.     Pursuant to Section 7(b)(ii) of the Certificate of Designation, upon the Company's issuance of the Series D Shares, the base conversion price of the Series B shares is calculated to be the "lowest amounts of consideration received or receivable by the Company with respect to one share of Common Stock upon the issuance or sale" of the Series D Shares, minus "the value of any other consideration received or receivable" by the purchasers of the Series D Shares namely the value of the 2018 Warrants. The Company, however, failed to apply this formula.

27.     The Series D Shares are convertible into 8 million shares of common stock. The Company received gross proceeds of approximately $6 million in their placement. The cost of financing the Series D Shares was $900,000, resulting in net proceeds of approximately $5.1 million.

28.     The 2018 Warrants are estimated to be worth $4,375,000, based on the standard NASDAQ valuation of $0.125 per share. Deducting the value of the consideration received by the Series D holder in the form of the 2018 Warrants from the net proceeds received by the Company ($725,000) results in a value of $1.359 for each share ($0.0906 pre-split) of Common Stock issuable upon exercise of the Series D Shares. A corresponding adjustment is therefore due to Plaintiffs for all of their Series B shares held prior to the adjustment.

29.     On May 14, 2018, Plaintiffs notified the Company's Chief Executive Officer that it disputed the Company's calculation of the base conversion price of the Series B shares, and demanded that the Company issue a corrected notice of adjustment. The Company did not respond.

4655559-7

30. Instead, on May 21, 2018, the Company filed a Form S-3 Registration Statement, pursuant to which the Company continued to rely upon the $11.25 per share ($0.75 pre-split) adjustment to the Series B share price.

31. From April 2, 2018 to May 22, 2018, Plaintiffs converted 800 shares (224 shares by Plaintiffs Iroquois Master Fund and 612 shares by Plaintiff ICIG) of the Series B shares into common stock at the incorrect conversion price of $11.25 per share ($0.75 pre-split).

32. On May 25, 2018, the Company filed a Form 8-K disclosing that on May 24, 2018, the Company entered into an agreement with a holder of warrants to purchase stock issued by the Company in January 2017 to exercise those warrants in exchange for the Company's agreement to reduce the exercise price of those warrants to $4.65 per share ($0.31 pre-split). The 8-K also disclosed that as a result of the reduction in the exercise price of the January 2017 Warrants, the conversion or exercise price of the Series B shares was reduced from $11.25 per share ($0.75 pre-split) to $4.65 per share ($0.31 pre-split).

33. On May 28, 2018, Plaintiffs converted 50 shares (14 shares by Plaintiffs Iroquois Master Fund and 36 shares by Plaintiff ICIG) of the Series B convertible preferred stock into common stock at the conversion price of $4.65 per share ($0.31 pre-split).

34. Plaintiffs have continued to convert and sell their shares since May 2018, all the while receiving an incorrect number of common shares as defendant has consistently refused to apply the proper conversion price.

35. On July 13, 2018, plaintiffs received notice of another adjustment to the conversion price due to dilutive issuance. This notice purported to reset the conversion price to $2.05 per share ($0.1367 pre-split). Again, defendant erred by ignoring the effect of the Series D issuance.

8

36. Plaintiffs are today holders of the Series B shares, but may continue to convert and sell as they deem prudent.

37. Pursuant to Sec. 7(a) of the Certificate of Designation, in the event of a reverse stock split, "the Conversion Price shall be multiplied by a fraction of which the numerator shall be the number of shares of Common Stock (excluding any treasury shares of the Corporation) outstanding immediately before such event, and of which the denominator shall be the number of shares of Common Stock outstanding immediately after such event."

38. The correct conversion price for the Series B shares prior to the stock split was $.09 per share and when adjusted pursuant to Sec. 7(a), the correct conversion price after the Reverse Stock Split is now $1.35 per share.

## FIRST CLAIM FOR RELIEF
(Breach of Contract by Failing to Properly Adjust Shares - Relief Sought: Money Damages)

39. Plaintiff repeats the allegations in paragraphs 1 to 38 above.

40. As set forth above, defendant has breached the Certificate of Designation as well as the duty of good faith and fair dealing inherent in the Certificate of Designation by delivering a Notice of Adjustment that is incorrect as to the conversion price of the Series B shares.

41. Plaintiffs have converted shares of the Series B shares at the conversion prices of $.75 per share and $.31 per share, instead of at the correct conversion price of $.09 per share. Defendant required conversion at the incorrect price and has refused to honor the correct price.

42. As a direct, approximate and foreseeable result of defendant's breach, plaintiff has suffered losses in an amount to be determined at trial, but estimated to exceed $5,000,000.

## SECOND CLAIM FOR RELIEF
(Specific Performance)

43. Plaintiff repeats the allegations in paragraphs 1 to 38 above.

44. As set forth above, defendant has breached the Certificate of Designation as well as the duty of good faith and fair dealing inherent in the Certificate of Designation by delivering a Notice of Adjustment that is incorrect as to the conversion price of the Series B shares.

45. Plaintiffs have converted shares of the Series B shares at the conversion prices of $.75 per share and $.31 per share, instead of at the correct conversion price of $.09 per share. As a result, plaintiffs have received fewer shares than they should have received.

46. Plaintiff has no adequate remedy at law.

47. As a result of defendant's breach, plaintiff is entitled to a decree of specific performance directing defendant to deliver the correct number of shares of common stock.

### THIRD CLAIM FOR RELIEF
(Failure to Properly Adjust Shares - Relief Sought: Preliminary and Permanent Injunction)

48. Plaintiff repeats the allegations in paragraphs 1 to 38 above.

49. As a result of issuing the Series D Shares and 2018 Warrants, pursuant to the Certificate of Designation Defendant was obligated to issue a correct notice of adjustment of the share price of Plaintiffs' Series B shares.

50. Despite its obligation to do so, Defendant has failed and refused to properly calculate the adjustment of the share price of Plaintiffs' Series B shares in accordance with the Certificate of Designation's requirements.

51. As a result of Defendant's refusal to issue a correct notice of adjustment, Plaintiffs have suffered damages.

52. Plaintiffs have no adequate remedy at law.

53. In the absence of injunctive relief, Plaintiffs will suffer irreparable harm.

54. Plaintiffs request, therefore, that the Court enter an order requiring Defendant to issue a corrected notice of adjustment reflecting the proper share price of Plaintiffs' Series B

4655559-7

shares as a result of issuing the Series D Shares and 2018 Warrants, and the subsequent Reverse Stock Split.

## FOURTH CLAIM FOR RELIEF
(For Declaratory Relief)

55. Plaintiff repeats the allegations in paragraphs 1 to 54 above.

56. There exists a justiciable controversy concerning whether the Company properly calculated the adjustment to the share price of Plaintiffs' Series B shares in accordance with the Certificate of Designation's requirements.

57. Based on the foregoing, Plaintiffs are entitled to a declaration that Defendant has improperly calculated the adjustment of the share price of Plaintiffs' Series B shares in accordance with the Certificate of Designation's requirements, and that the proper calculation is for an adjustment of $1.35 per share.

WHEREFORE, Plaintiffs pray that the Court award the following relief:

A. On the First Claim for Relief, awarding Plaintiffs damages in an amount to be determined at trial, but believed to exceed $5,000,000.

B. On the Second Claim for Relief, a decree of specific performance, directing defendant to issue the correct number of shares of common stock.

C. On the Third Claim for Relief, for an order requiring Defendant to issue a corrected notice of adjustment of the share price of Plaintiffs' Series B shares in accordance with the Certificate of Designation's requirements;

D. On the Fourth Claim for Relief, for declaratory relief as set forth in the Complaint;

E. An award of attorneys' fees and other costs and expenses incurred by Plaintiffs, pursuant to section 8(d) of the Certificate of Designation;

F. Such other and further relief as the Court deems just and proper.

11

Dated: New York, New York
July 26, 2018

OLSHAN FROME WOLOSKY LLP

By: _____
Thomas J. Fleming
*Attorneys for Plaintiffs*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

4655559-7